IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Satiro J. Williams, #304111,<br><br>                    Petitioner,<br><br>vs.<br><br>Gregory Knowlin, Warden of<br>Turbeville Correctional Institution,<br><br>                    Respondent. | Civil Action No. 6:09-3182-MBS-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

       The petitioner, a state prisoner proceeding with the assistance of counsel, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

       The record reveals that the petitioner is currently confined in the Turbeville Correctional Institution of the South Carolina Department of Corrections ("SCDC") as the result of his Colleton County conviction and sentence. The Colleton County Grand Jury indicted the petitioner at the January 2003 term of court for armed robbery (03-GS-15-0032) and assault and battery with intent to kill ("ABWIK") (03-GS-10-0031). Attorney E. W. Bennett, Jr., represented him on these charges. On July 27, 2004, the petitioner received a jury trial before the Honorable Daniel F. Pieper.

According to the record, including the trial transcript, the State originally charged the petitioner, along with Jarrod Blackwell and Marco Jenkins, in connection with the armed robbery and shooting of Albert Brice early in the morning of September 14, 2002. This occurred at "Al's Club" in the Williams area of Colleton County, South Carolina. An unlicensed, gray Chevrolet station wagon drove past the club several times that night. Shortly after the station wagon disappeared, two men wearing ski masks entered the small club and shot the proprietor, Mr. Brice, in his legs. The men took money from the cash register, as well as Mr. Brice's pocket, and then fled the scene with two other individuals who had been waiting in the gray, unlicensed station wagon. They were headed in the direction of Johnsville, South Carolina.

David Grant, a club employee, was one of the people present when the robbery occurred.[1] He testified that two men wearing "hooded masks"[2] and carrying guns walked up and ordered everyone to "get down, get down." (Trial Transcript, p. 354). The men then "walked on over . . . to where Mr. Brice was standing . . . and started shooting." (*Id.*). Mr. Grant positively identified the petitioner as one of the men he had seen that night, both by his distinctive voice and the glasses he was wearing.

Mr. Brice was rushed to the hospital after the shooting. With respect to the incident, Mr. Brice testified the two masked men began shooting as soon as they crossed the road. He positively identified the petitioner as one of his assailants. One bullet fired by the petitioner struck him in both legs. The petitioner then ran up and ordered him to "give it up, give it up. . . .[T]his is not a game." (*Id.*, p. 388). Also, the petitioner took $200 from Mr. Brice's pocket and he instructed his cohort, Brian Williams, to take Brice's aunt and get money from inside the club. Mr. Brice identified the petitioner by voice and by the

---

[1] Nine or ten people were in the club at that time.

[2] The masks had holes for the eyes and mouth.

2

eyeglasses that he wore during the crimes. Also, about two weeks earlier, the petitioner had shown Mr. Brice the gun he used that night.

Police found Blackwell and Jenkins standing outside a gray Chevrolet station wagon that was parked in the yard of a Johnsville residence, soon after the incident occurred. The vehicle had a paper dealer's tag on it, it was registered to Blackwell's father, and the residence was a short distance away from the club. Eventually, both men were detained. Blackwell told the police that he had loaned the station wagon to the petitioner the night of the incident. Jenkins told the police that he was near the club in the station wagon the night of the incident with the petitioner and with someone who fit the description of Williams[3].

The petitioner was tried jointly with co-defendants Blackwell and Jenkins. During the trial, the State announced that it was dismissing the charges against Blackwell and Jenkins and was granting them transactional immunity. Both Blackwell and Jenkins testified against the petitioner. Although they claimed that they had been coerced, both Blackwell and Jenkins admitted that they had given statements implicating the petitioner in the crimes for which he was on trial. Detective Gene Johnson of the Colleton County Sheriff's Office was the officer who allegedly threatened to arrest the men if they did not implicate the petitioner. He denied coercing or threatening them in order to get a statement.

The jury found the petitioner guilty of armed robbery and a lesser included offense of assault and battery of a high and aggravated nature ("ABHAN"). Judge Pieper sentenced him to 15 years imprisonment for armed robbery and to a concurrent sentence of 10 years imprisonment for ABHAN

The petitioner timely served and filed a notice of appeal. Attorney Tara Dawn Shurling represented him on appeal. However, the petitioner filed an affidavit March 18,

---

[3]Williams has not been arrested or prosecuted for his alleged involvement in the crime (App. 406).

2005, in which he requested dismissal of his appeal. The South Carolina Court of Appeals filed an Order of Dismissal And Remittitur on March 22, 2005.

The petitioner filed a *pro se* post-conviction relief ("PCR") application (05-CP-15-0410) on May 27, 2005. In his application, he alleged the following grounds of ineffective assistance of trial counsel:

> (a) Trial counsel failed to adequately investigate the case prior to trial.
>
> (b) Trial counsel failed to adequately prepare and present witnesses at trial.
>
> (c) Trial counsel failed to recognize and present objections to errors which occurred during trial.
>
> (d) Trial counsel failed to develop and present viable defenses to the charges against the Applicant prior to and during his trial.

The State filed its Return on October 17, 2005.

The Honorable Perry M. Buckner held an evidentiary hearing into the matter on August 27, 2007, at the Beaufort County Courthouse. The petitioner was present at the hearing, and Ms. Shurling represented him. Assistant Attorney General Lance S. Boozer represented the State. The petitioner testified on his own behalf at the hearing, and he presented the testimony of trial counsel, Mr. Bennett.

On October 10, 2007, Judge Buckner filed an Order of Dismissal with Prejudice, in which he denied relief and dismissed the application with prejudice. Judge Buckner's Order addressed the petitioner's claims that trial counsel was ineffective because he failed to (1) present a voice identification expert to assist in the petitioner's trial; (2) investigate and pursue the location of another person involved in the crime (Brian Williams); and (3) make a motion to dismiss the petitioner's charges based on prosecutorial misconduct.

The petitioner, through collateral counsel, then filed a Rule 59(e), SCRCP, motion on October 22, 2007. He asked the court to reconsider the allegation that trial counsel was ineffective for not moving for a mistrial based upon prosecutorial misconduct in dismissing the charges against the petitioner's two co-defendants during their joint trial. The State filed a Return and Motion to Dismiss, opposing relief, on October 22, 2007.

Judge Buckner filed an Order of Dismissal on May 28, 2008. He declined to alter the original judgment:

> Based upon careful reconsideration of all of the evidence in this case and upon full consideration of Applicant's motion and supporting memorandum, this Court is not persuaded to alter or amend the judgment. This Court further finds that oral argument would not aid in the reconsideration of the original judgment. The previous order fully comports with the requirements of Rule 52(a) SCRCP.

(App. 609).

The petitioner timely served and filed a notice of appeal. Ms. Shurling continued her representation of the petitioner in collateral appellate proceedings. On November 12, 2008, the petitioner filed a petition for writ of certiorari. The two questions presented in the petition were stated as follows:

> 1. Whether trial counsel was ineffective for failing to object to the State being allowed to dismiss all of the charges against the Petitioner's co-defendants during a joint trial in the middle of the State's case?
>
> II. Whether trial counsel was ineffective for failing to move, during a joint trial, for a mistrial after the charges against the [Petitioner's] co-defendants were dismissed and they were called as witnesses against him?

The State filed a Return to the petition on March 12, 2009. The South Carolina Supreme Court filed an Order Denying Certiorari on September 3, 2009. It sent the Remittitur to the Colleton County Clerk of Court on September 23, 2009.

5

In his petition now before this court, the petitioner raises the following allegations:

**GROUND ONE**: Trial counsel was ineffective, in violation of Petitioner's Sixth and Fourteenth Amendment rights, for failing to object to the State's dismissal of charges against the Petitioner's co-defendants during their joint trial, resulting in selective prosecution in violation of the Petitioner's Equal Protection rights.

**SUPPORTING FACTS:** The Petitioner was tried jointly with two co-defendants, Jarrod Blackwell and Marco Jenkins. Approximately halfway through the trial, the State announced that it had dismissed the charges against Blackwell and Jenkins and that it was granting them transactional immunity. The trial resumed and both Blackwell and Jenkins testified against the Petitioner. They were impeached with statements they made to the police, previously inadmissible because of Confrontation Clause issues, implicating the Petitioner in this crime. The State argued during its closing argument that all three were guilty and that the jury should believe Blackwell's and Jenkins' statements implicating the Petitioner. Defense counsel did not object to the State's dismissal of the charges against Blackwell or Jenkins.

**GROUND TWO**: Defense counsel was ineffective in failing to move for a mistrial following the State's dismissal of charges against co-defendants.

**SUPPORTING FACTS**: The Petitioner was tried jointly with two co-defendants, Jarrod Blackwell and Marco Jenkins. Approximately halfway through the trial, the State announced that it had dismissed the charges against Blackwell and Jenkins and that it was granting them transactional immunity. The trial resumed and both Blackwell and Jenkins testified against the Petitioner. They were impeached with statements they made to the police, previously inadmissible because of Confrontation Clause issues, implicating the Petitioner in this crime. The State argued during its closing argument that all three were guilty, and that the jury should believe Blackwell's and Jenkins' statements implicating the Petitioner. Defense counsel did not move for a mistrial following the State's dismissal of charges against Blackwell and Jenkins.

On February 19, 2010, the respondent filed a motion for summary judgment. On March 4, 2010, the petitioner moved for an extension of time to respond to the motion,

which was granted through April 7, 2010. The plaintiff, through counsel, filed his opposition to the motion for summary judgment on April 7, 2010.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> [U]nder 28 U.S.C. § 2254, "the scope of our review is highly constrained." *Jackson v. Johnson*, 523 F.3d 273, 276 (4th Cir. 2008). We may only grant [the petitioner] relief if the state court's adjudication of his claims (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2)

7

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

The "contrary to" and "unreasonable application" clauses of § 2254(d) have independent meanings. *Tucker*, 350 F.3d at 438. A state court's decision is "contrary to" clearly established federal law under § 2254(d)(1) when it "applies a rule that contradicts the governing law set forth" by the United States Supreme Court, or "confronts a set of facts that are materially indistinguishable from a decision of ... [the Supreme] Court and nevertheless arrives at a result different from ... [that] precedent," *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

A state court's decision involves an "unreasonable application" of clearly established federal law under § 2254(d)(1) "if the state court identifies the correct governing legal rule from ... [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. This standard is quite deferential: "The state court's application of clearly established federal law must be 'objectively unreasonable,' and 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' " *Robinson v. Polk*, 438 F.3d 350, 355 (4th Cir. 2006) (quoting *Williams*, 529 U.S. at 411). Moreover, when "assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." *Wilson v. Ozmint*, 352 F.3d 847, 855 (4th Cir. 2003) (quotation marks omitted).

Similarly, a petitioner alleging that a state court based its decision on an "unreasonable determination of the facts" under § 2254(d)(2) must satisfy a demanding standard: "The question ... is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465 (2007). Finally, § 2254(e)(1) provides that a state court's factual decisions "shall be presumed to be correct" and that the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).FN4.

> FN4. Moreover, in cases proceeding under either § 2254(d)(1) or § 2254(d)(2), we can only grant the petitioner relief if the error had "a substantial

> and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation marks omitted).

*Powell v. Kelly*, 562 F.3d 656, 664-65 (4th Cir. 2009) (parallel citations omitted).

The petitioner's two grounds for relief are interrelated. The petitioner's trial began as a joint trial with his two co-defendants, Blackwell and Jenkins. At the outset of the trial, the State conceded that it would have to redact any part of Jenkins' statement that referred to the petitioner (App. 78). A substantial portion of the beginning part of the trial was dedicated to establishing that Blackwell and Jenkins were in a gray station wagon that matched the description of the station wagon observed at the scene of the crime (App. 109-250). Following the testimony of Detective Johnson, the trial court took up the issue of the admissibility of the identifications made of the petitioner in a *Neil v. Biggers*, 409 U.S. 188 (1972), hearing (App. 250-333). After the trial court made its rulings on the identification issue, the trial court took a lunch recess. (App. 333).

When the parties returned, the prosecutor stated that he had decided to dismiss the charges against Blackwell and Jenkins:

> Solicitor: Your Honor, at this time, the State, having reviewed the evidence presented in this case and looking prospectively to the witnesses are yet to come, moves to dismiss the armed robbery indictments against Marco Jenkins and against Jarrod Blackwell. The State is going to grant them transactional immunity and call them as witnesses.

(App. 333). After both co-defendants stated that they did not object, the prosecutor reiterated to the trial judge that "in my review of that evidence that I felt that it rose to no more than a level of suspicion because it wasn't proof beyond a reasonable doubt and that's why I moved to dismiss the charges against them" (App. 334). The trial judge's response indicated that he had contemplated granting a directed verdict on these charges:

> [I]f it makes you feel any better, I think you just said exactly what I would have said. I used that exact word at lunch today, suspicion.

9

(App. 334).

Defense counsel did not object or move for a mistrial at this point. Defense counsel stated that he did not think there was anything that could be done other than giving the jury a curative instruction:

> The Court: Normally at the directed verdict stage I would just say, you know, that I've taken that out of their hands and I've made certain decisions as a matter of law that the case will not go forward against those two. But if you've got any suggestions I certainly would be happy to hear you out.
>
> Mr. Bennett: Yeah, I was just kind of caught off guard by that, Your Honor. Of course, I have some concerns, you know, if they dismiss the case against the two co-defendants and just leaves my guy alone, you know, if we had started out by ourself [sic] I don't think there would have been a problem but I can see some possible prejudice, I mean, of course I can't keep the State from dismissing their cases but I do have some concerns about what effect that might have on the jury. You know –
>
> The Court: I'll be happy to tell them what you think is appropriate but I don't know that it would be any different than my directing a verdict, in telling the jury that. I would think that would be a stronger concern that you worry about whether the jury is wondering why did the Judge direct a verdict as to two and not the third, but –
>
> Mr. Bennett: Yeah, I think that's about all you can do, Judge.
>
> The Court: I mean, I'll be happy to tell them that upon an agreement of the parties the case will not proceed against two of the—that we are only proceeding on two of the charges at this point as to one of the defendants.
>
> Mr. Bennett: That's about all you can do, Judge. I mean, I don't know of anything else you could do, really, to rectify any prejudicial effect, I mean, but that's just something that happens.

(App. 334-36).

After the trial judge briefly met with counsel in chambers, the prosecutor placed on the record that he had also dismissed a warrant charging Blackwell with violation of a restraining order and that he had subpoenaed both Blackwell and Jenkins to testify for

10

the prosecution (App. 336). In response to the prosecutor's question, the trial judge ruled that Blackwell and Jenkins were subject to sequestration. The men then left the courtroom (App. 337-38). Following their departure, the trial judge reviewed his proposed instruction to explain to the jury what had occurred. Counsel stated this was sufficient (App. 338).

>When the jury returned, the trial court gave them the following instruction:
>
>The Court: All right, ladies and gentlemen, I originally indicated to you that this case was proceeding with three defendants. The charges against two of the defendants, Mr. Blackwell and Mr. Jenkins, will not proceed any further and you will not be required to decide any issues pertaining to those two individuals. Now the fact that those charges will not proceed must not, in any way, influence your decision as to the remaining defendant. You must decide the remaining charges against this defendant based solely on the evidence and the law presented to you.

(App. 339).

Blackwell and Jenkins were then called as witnesses against the petitioner. While both testified that they did not have any involvement in the crime or with the petitioner the night of the incident, the State impeached them with their statements given to Detective Johnson (App. 371-72, 376-77). Jenkins testified that he implicated "Terry O" in the crime (App. 376-77). Defense counsel did not object or move for a mistrial at any point in time during either witness' testimony. During closing argument, the State argued that the jury should believe the statements that Blackwell and Jenkins gave to the police:

>Do you recall, and again rely on your memory and not mine or Mr. Bennett's, do ya'll [sic] recall the testimony of Marco Jenkins and of Jarrod Blackwell and the references to Satiro Williams? Do you believe them or not? Do you believe what they deny or do you believe what they told the officers?

(App. 453). Defense counsel did not object or move for a mistrial in response to the prosecutor's closing argument.

At the PCR hearing, the petitioner alleged that defense counsel was ineffective for failing to object to the State's dismissal of the charges against the co-

11

defendants or move for a mistrial following the State's dismissal of the charges (App. 510-11). Trial counsel testified that the State's evidence was weak against the petitioner's co-defendants. As counsel had never been involved with a criminal trial in which the State dismissed charges against co-defendants, he was "kind of taken off guard" when it happened in this trial, but he felt that it may have been motivated by the evidence elicited in the *Neil v. Biggers* hearing. Counsel considered moving for a mistrial, but the trial judge indicated that he was going to treat it like a directed verdict situation and give a curative instruction to the jury. Also, the trial judge had strongly indicated that he was considering granting a directed verdict to the co-defendants if the charges had not been dismissed prior to that stage of the proceedings (App. 513, 524-28).

Trial counsel testified that it was part of his trial strategy to focus on the curative instruction. "And, from the get-go [the trial judge] seemed to be kind of on top of that issue because . . . he basically said he was going to treat it more or less in the same fashion as if he had granted a directed verdict in favor of the two co-defendants." Trial counsel wanted the trial judge to explain to jurors "that the fact that they were not proceeding against the other two defendants should not be held against my client in any way, you know, to prejudice his rights. And the trial judge gave . . . that instruction." Counsel thought that he had made a motion for mistrial and, in hindsight, he acknowledged that it "would have been a viable motion." He testified that if he "had to do it over again" he "probably would make that motion." However, he was not sure, even in hindsight, that a mistrial would have been granted. He also believed that the judge's curative instruction would remedy any potential prejudice that was created when the charges against the co-defendants were dismissed (App. 529-31; 548-49).

Counsel did not discuss with the petitioner the strategy of conceding manifest necessity existed for a mistrial in order to assure the judge and prosecutor that he was not trying to evade retrial but that he simply did not want to finish the trial with a jury that had

12

been tainted. However, counsel "had done enough research" in the course of "practicing law for over 20 years" that he "did not know of anything under our law that would prevent the State" from dismissing jointly tried co-defendants, and he analogized it to the trial judge's right to grant a directed verdict. It was his understanding that the State had the authority to dismiss before, during, or after a trial. He researched this issue after the trial and he did not find any contrary authority (App. 532-33).

Trial counsel testified that he did not move for a mistrial when the co-defendants subsequently testified as witnesses for the State and were cross-examined about portions of their prior statements implicating the petitioner because he did not believe the co-defendants' testimony was damaging or prejudicial to the petitioner. The prosecutor had to impeach their credibility, and they were not fully cooperative with the State. Also, neither witness' statement was actually introduced, and each co-defendant denied involvement with the robbery or being with the petitioner on the night in question. Further, counsel did not believe that the State was bound by the trial judge's pretrial ruling that the State could not elicit that Blackwell and Jenkins had given prior statements implicating the petitioner, since they were no longer co-defendants (App. 537-41).

The petitioner also argued that defense counsel was ineffective for failing to move to dismiss the charges against the petitioner as a result of selective prosecution and a violation of his Equal Protection rights (App. 546). Trial counsel testified he did not consider making such a motion because he did not believe he could prove prosecutorial misconduct and he did not believe that the State started the trial with the intention of dismissing the charges against two of the defendants and proceeding against just one defendant (App. 546). Rather, counsel reiterated that he believed that the prosecutor decided to drop the charges against the co-defendants after certain testimony came out during the *Neil v. Biggers* hearing (App. 546; *see also* App. 524, 527-28).

13

> The PCR court found as follows:
>
> At the PCR hearing, Applicant alleged that counsel was ineffective for failing … to make a Motion to Dismiss Applicant's charges based on prosecutorial misconduct.
> …
> Counsel testified he had never been involved in a case where the Solicitor dropped two co-defendants in the middle of a trial and proceeded with the third co-defendant. Counsel testified he considered making a Motion for Mistrial but did not believe it would have been granted. Counsel also testified he did not discuss manifest necessity with the applicant during the trial. Counsel further testified that although the co-defendants testified as State's witnesses, the testimony was not prejudicial to the applicant. Counsel indicated the witnesses testified they did not know the applicant and that they were not with the applicant the day of the crime. Counsel testified he did not consider making a Motion for Dismissal of charges against Applicant due to prosecutorial misconduct because he did not feel he could have proven this at the trial[.]
>
> This Court finds that counsel's testimony was credible and Applicant's testimony was not credible. This Court finds that the applicant failed to carry his burden to show that counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. Where counsel articulates a valid strategic reason for her action or inaction, counsel's performance should not be found ineffective. *Roseboro v. State*, 317 S.C. 292, 454 S.E.2d 312 (1996). This allegation of ineffective assistance of counsel is denied.
>
> However, even if Applicant has proven the first prong of the *Strickland* test that his counsel's representation was deficient for failing to investigate and prepare for Applicant's case, he must further prove the second prong that because of this deficiency there is reasonable probability that counsel's deficient conduct prejudiced the outcome of Applicant's trial. This Court finds that the applicant has failed to prove the second element of *Strickland* requiring prejudice. Therefore, Applicant has failed to show prejudice. This allegation of ineffective assistance of counsel is denied.

(App. 596-98).

The petitioner appealed these rulings to the Supreme Court of South Carolina and argued that defense counsel was ineffective for failing to move for a mistrial and for

failing to move to dismiss the charges as a result of selective prosecution. The Supreme Court denied certiorari in a "letter order" which simply stated that the petition had been denied. *See Williams v. State*, S.C. Sup. Ct. Order dated September 3, 2009.

The respondent argues that summary judgment should be granted in his favor as the claims fail on the merits. This court agrees. Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at 689.

The decision to grant or deny a mistrial is within the sound discretion of the trial judge. *State v. Cooper*, 514 S.E.2d 584, 590 (S.C. 1999). The trial court's decision will not be overturned on appeal, absent an abuse of discretion amounting to an error of law. *Id*. "The granting of a motion for mistrial is an extreme measure that should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way." *State v. Beckham*, 513 S.E.2d 606, 610 (S.C. 1999) (citing *State v. Kelsey*, 502 S.E.2d 63 (S.C. 1998)). Finally, "[a]n instruction to disregard objectionable evidence is usually deemed to cure the error in its admission unless on the facts of the particular case it is

probable that notwithstanding such instruction the accused was prejudiced." *State v. Johnson*, 512 S.E.2d 795, 801 (S.C. 1999).

Here, as found by the PCR court, the petitioner has failed to meet his burden of demonstrating deficient representation because trial counsel articulated an objectively reasonable trial strategy for not moving for a mistrial during the petitioner's trial. First, counsel focused more on the curative instruction than moving for a mistrial. He believed that the trial judge would deny a motion for a mistrial. Moreover, the circumstances were not so grievous that a mistrial was the only way to remove prejudice. *See Kelsey*, 502 S.E.2d at 70; *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996) (finding that only under the "most extraordinary circumstances" does a limiting instruction fail to "cure[] . . . unfair prejudice").

"'[T]he test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's . . . conduct must in fact have been improper, and (2) such . . . conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.'" *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993) (*United States v. Brockingham*, 849 F.2d 872, 875 (4th Cir.1988)). *See also United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002) (reversible prosecutorial misconduct occurs when the prosecution engages in "improper" conduct that "prejudicially affect[s]" an individual's "substantial rights so as to deprive him of a fair trial"). Whether the errors must result in a reversal is dependent upon the facts in each case. *Mitchell*, 1 F.3d at 241.

The United States Supreme Court has never held that actions by a prosecutor, such as those by the prosecutor in the petitioner's trial, constitute prosecutorial misconduct or selective prosecution, and indeed the petitioner cites to no such precedent. *See Carey v. Musladin*, 549 U.S. 70, 74-77 (2007) (finding that Court of Appeals erred by holding the state court of appeal's decision was contrary to or an unreasonable application

of clearly established federal law as determined by the Supreme Court, where the state court decision was contrary to Ninth Circuit precedent but the Supreme Court had never decided the issue). To the contrary, as noted by the respondent, decisions like the ones made here occur routinely. In *U.S. v. DeLucca*, 630 F.2d 294 (5th Cir. 1980), the Fifth Circuit Court of Appeals found no error in allowing the case to proceed against defendants in a joint trial where two other co-defendants' charges were dismissed by the government on the fourth day of trial. The court stated:

> It is not at all uncommon for one or more of multiple defendants to enter guilty pleas during a trial or for the Government to move for dismissal of its case against one or more defendants, as was done here. In fact, the government has a duty to dismiss as to any defendant as soon as it finds that the evidence as to any of the defendants is insufficient to support a conviction. Of course, the dismissal of one or more defendants should not be used by the government in any way to directly or impliedly suggest to the jury that the remaining defendants are guilty. We do not find from the record that the government did anything other than to ask for a dismissal promptly upon making a determination that the evidence was not sufficient to justify a conviction. The court can discern no ulterior motive implicit in the government's motion.

*Id.* at 298.

The petitioner argues his situation is different because the co-defendants testified in the case against him after their charges were dismissed. However, the record shows that the State did not vouch for the credibility of the petitioner's co-defendants. The State impeached the co-defendants' credibility, and trial counsel's assessment of the impact of their testimony is supported by the record. The co-defendants denied any involvement in the crimes or being with the petitioner on the night of the crimes, and they both indicated that their trial testimony was truthful. Blackwell explained that he gave his statement to Detective Johnson in order to "just keep me from getting locked up." Jenkins likewise testified that he gave the statement implicating the petitioner only after Detective Johnson threatened to arrest him. Also, he explained that he and Blackwell had gone to the victim's

17

house and had a conversation with the victim's wife on September 14, 2002, "because I wanted to let him know that I wasn't . . . capable of doing any harm to him because . . . we were friends" (App. 368-82).

Moreover, trial counsel reasonably believed that the trial judge would give a curative instruction similar to one given after a directed verdict motion is granted, and counsel reasonably felt that the curative instruction as given would remedy any prejudice to the petitioner that could have developed. The trial judge asked for counsel's input in phrasing the curative instruction, and the trial judge then gave the instruction to the jury (App. 339). "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Olano*, 507 U.S. 725, 740-741 (1993) (" '[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them' ") (citing *Francis v. Franklin*, 471 U.S. 307, 324, n. 9 (1985)). Indeed, in assessing prejudice for purposes of an ineffective assistance of counsel claim, the Court in *Strickland* observed that "a court should presume ... that the judge or jury acted according to law." 466 U.S. at 694. Based upon the foregoing, counsel's trial strategy was reasonable under the circumstances, and he was not deficient in his representation. Further, the petitioner has failed to show prejudice in light of the instruction given by the judge.

The petitioner has also failed to establish a claim for selective prosecution. "Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder*, 442 U.S. 114, 124-25 (1979). So long as there is probable cause to believe the accused committed a criminal offense, the decision to prosecute is within the prosecutor's discretion as long as it is not tainted by an unconstitutional motive. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996).

18

> Indeed, criminal defendants commonly complain that other persons are more worthy of criminal prosecution. But our constitutional system leaves it to the discretion of the Executive Branch to decide who will face prosecution. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). Unless a defendant provides "clear evidence" to overcome the presumption that a government prosecutor has acted lawfully and without discrimination-a "particularly demanding" standard - he cannot demonstrate a constitutional violation for selective prosecution. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999).

*United States v. Passaro*, 577 F.3d 207, 219 (4th Cir. 2009) (parallel citations omitted).

In this case, there is no evidence that the Solicitor's Office began the joint trial with the intention of dismissing the charges against the petitioner's co-defendants, so that those co-defendants could testify against the petitioner. Rather, the only evidence is that the prosecutor made the assessment after he had presented some of the State's case against Blackwell and Jenkins that the State would not be able to establish their guilt, a matter which the petitioner does not contest. Thus, it was reasonable for trial counsel to believe that testimony elicited in the *Neil v. Biggers* hearing prompted the prosecutor to dismiss the charges against the co-defendants. Moreover, counsel correctly reasoned that the petitioner was not prejudiced by the co-defendants' testimony since they both denied involvement in the offenses and the trial judge gave the limiting instruction. The petitioner did not provide "clear evidence" to overcome the presumption that the prosecutor acted lawfully and without discrimination, and he therefore cannot demonstrate a constitutional violation for selective prosecution.

The petitioner also claims that the State's actions violated the Equal Protection Clause. "The Equal Protection Clause prohibits selective enforcement 'based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Batchelder*, 442 U.S. at 125 n. 9 (1979) (citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). It is unclear what "arbitrary classification" the petitioner argues the prosecutor employed in

19

choosing to prosecute him and not his co-defendants. "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" *Armstrong*, 517 U.S. at 465 (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926)). The petitioner has offered nothing other than his conclusory allegation on this issue.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the petitioner has failed to show that the state courts' rejection of his claims was "contrary to" or involved an "unreasonable application of" clearly established United States Supreme Court precedent. Accordingly, this court recommends that the respondent's motion for summary judgment (doc. 11) be granted.

s/Kevin F. McDonald<br>
United States Magistrate Judge

July 27, 2010

Greenville, South Carolina