IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Satiro J. Williams, #304111,  )<br> )<br>      Petitioner, )<br> )<br>vs. )<br> )<br>Gregory Knowlin, Warden of Turbeville )<br>Correctional Institution, )<br> )<br>      Respondent. )<br>_____) | C/A No. 6:09-3182-MBS<br><br>**ORDER AND OPINION** |

Petitioner Satiro J. Williams is an inmate in custody of the South Carolina Department of Corrections. On December 8, 2009, Petitioner, who is represented by counsel, filed the within petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being confined unlawfully.

This matter is before the court on motion for summary judgment filed by Respondent on February 19, 2010. Petitioner filed a response in opposition to Respondent's motion on April 7, 2010. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Kevin F. McDonald for pretrial handling. On July 27, 2010, the Magistrate Judge issued a Report of Magistrate Judge in which he recommended that Respondent's motion for summary judgment be granted. Petitioner filed objections to the Report of Magistrate Judge on August 12, 2010.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo

determination of any portions of the Report of Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

I. FACTS

The facts are detailed in the Report of Magistrate Judge. Briefly, in the early morning hours of September 14, 2002, the victim, Albert Lee Brice, was outside talking to friends at a club he owned in a secluded area near Williams, South Carolina. Testimony of Albert Lee Brice 386, ECF No. 12-5. Brice heard someone say "get down." He saw two males wearing ski masks emerge from the woods and heard gun shots. Id. A bullet went through one of Brice's leg and into the other leg. Id. at 387. One of the men came over to Brice and told him to "give it up, this is not a game." Brice recognized Petitioner as the gunman. Id. at 389. Petitioner went into Brice's pockets and took $200. Id. at 388. Petitioner's companion took Brice's aunt, who was working at the club, inside the building and had her empty out the cash register. Id. Petitioner forced Brice to walk back into the club. Id. at 390. Petitioner and his companion ran back into the woods, and a number of friends helped Brice into a vehicle to take him to the hospital. Id. at 393, 404. As the vehicle in which Brice was riding approached an intersection, a gray station wagon ran a stop sign and almost collided with Brice's vehicle. Id. at 393. Brice could see four persons in the station wagon, and when the vehicle he was in pulled behind the station wagon, he could see that the station wagon had no license plate. Id. Brice required surgery and sustained permanent damage. Id. at 388, 486.

Marshall R. Clark of the Colleton County Sheriff's Department received a call that an armed robbery had taken place at the club in Williams and that a gray Chevrolet station wagon with no

license tag had left the scene and possibly had traveled to the Johnsville, South Carolina area. Testimony of Marshall R. Clark 163-64, ECF No. 12-2. Clark located a vehicle matching the description in the yard of a house in Johnsville. A black male was standing at the rear of the vehicle. Id. at 165. Clark drove past the location, parked down the road so he could observe the scene, and requested another officer to meet him at the location. Id. About the time the other officer arrived at the scene, two black males, Jarrod Blackwell and Marco Jenkins, walked from the yard of the residence into the roadway. Id. Clark and the other officer spoke with them until the arrival of Brian Freeman, an investigator with the Colleton County Sheriff's Department. Id. at 166. Freeman took a number of photographs of the station wagon and Brice's wounds. He also requested that Blackwell and Jenkins submit to a gunshot residue test. Testimony of Brian Freeman 135, 139, ECF No. 12-2. Freeman was transferred to a different division shortly thereafter, and the investigation was assumed by Gean Johnson of the Colleton County Sheriff's Office. Id. at 139, Testimony of Gean Johnson 204, ECF No. 12-3.

Petitioner was indicted for assault and battery with intent to kill and armed robbery. Blackwell and Jenkins were indicted for armed robbery. All defendants appeared for a jury trial commencing July 27, 2004 in Walterboro, South Carolina before the Honorable Daniel F. Pieper. Johnson testified that he interviewed Brice, Blackwell, Jenkins, and a number of witnesses in conducting his investigation. Testimony of Gean Johnson 206, ECF No. 12-3. On cross-examination, however, Johnson admitted that the proceeds of the robbery were not recovered, that the gun residue tests performed on Blackwell and Jenkins were negative, that no weapon was recovered, no effects of any crime were found inside the station wagon, and no forensic evidence connected Blackwell and Jenkins to the crime. Id. at 216-29; 244-48. Johnson admitted that he had

been unable to locate the fourth suspect, Brian Williams. Id. at 233-40; 243-44.

After Johnson's testimony, the trial judge excused the jury and, upon motion of trial counsel, held a hearing pursuant to Neil v Biggers, 409 U.S. 188 (1972) (setting forth factors to determine if witness identification is reliable). Transcript of Trial, 251-332, ECF Nos. 12-3, 12-4. Trial counsel moved to suppress any in-court identification of Petitioner by Charles Phoenix, David Grant, who were present during the robbery, as well as the victim, Albert Brice. The solicitor proffered the testimony of Phoenix, Grant, and Brice. Id. at 254-322, ECF Nos. 12-3, 12-4. Trial counsel argued that voice recognition is the weakest form of identification. Id. at 327, ECF No. 12-4. Trial counsel noted that "this is a pretty serious crime and to allow identification by voice only with masks, with people with masks on, and with such limited contacts and prior knowledge, even Mr. Brice said he didn't know [Petitioner] that well. They didn't grow up together, he wasn't, you know, talking to him on a constant basis . . . it wasn't like [Petitioner was] one of his good friends or acquaintances even he would have." Id. at 331. The trial judge stated that voice recognition is "definitely not as necessarily clear cut as visual but I wouldn't foreclose a voice identification. I mean, otherwise, you know, for example a blind person is accosted and they say I recognize that voice, I mean, that would foreclose their ability to identify someone. It might be a matter of credibility." Id. The trial judge ruled that Brice and Grant could testify, but that Phoenix could not. Id. at 332.

During the Biggers hearing, Brice testified that neither Blackwell nor Jenkins was on his property the night of the robbery and that he did not recognize either of them as having been in the station wagon that nearly collided with Brice's vehicle. Id. at 319-22. When court reconvened, the solicitor moved to dismiss the armed robbery indictments against Blackwell and Jenkins. Transcript of Trial 333, ECF No. 12-4. The solicitor informed the trial judge that the state was going to grant

4

them transactional immunity and call them as witnesses. Id. The solicitor stated for the record that, in his review of the evidence he "felt that it rose to more than a level of suspicion because it wasn't proof beyond a reasonable doubt and that's why [he] moved to dismiss the charges against" Blackwell and Jenkins. Id. at 334. Defense counsel raised a concern of prejudice resulting from the solicitor's dismissing the case as to Blackwell and Jenkins and leaving Petitioner alone. Id. at 335. The trial judge determined that the state's dismissal of the co-Defendants was similar to his directing a verdict, and that he would give a curative instruction to the jury as was his practice when he dismissed a defendant during trial. Id. Thus, the trial judge informed the jurors:

> All right, ladies and gentlemen, I originally indicated to you that this case was proceeding with three defendants. The charges against two of the defendants, Mr Blackwell and Mr. Jenkins, will not proceed any further and you will not be required to decide any issues pertaining to those two individuals.
>
> Now the fact that those charges will not proceed must not, in any way, influence your decision as to the remaining defendant. You must decide the remaining charges against this defendant based solely on the evidence the law presented to you.

Id. at 339.

The jury next heard from witnesses who had been present at the shooting, including Barbara Bowman and David O'Neal Grant. Id at 339-66. The solicitor called Blackwell, who denied being in the vicinity of the club where the shooting took place on September 14, 2002. Testimony of Jarrod Blackwell 366-69, ECF No. 12-5. Blackwell denied being in contact with Petitioner the early morning hours of September 14, 2002. Id. at 370. Blackwell denied loaning the gray station wagon to Petitioner. Id. at 371. Blackwell admitted that he had told Johnson he had loaned the station wagon to Petitioner,

> Because I felt that if I told him something – he wasn't believe me when I was

trying to tell him that I wasn't there, I didn't have nothing to do with that, and he was telling me he was going to lock me up, you know, so I just thought I would tell him something, you know to try to keep from getting locked up. I had never been in that situation before. So I thought it was to just keep me from going to jail.

Id. at 372.

Jenkins testified that he caught a ride to Johnsville, South Carolina, where he encountered Blackwell. Testimony of Marco Brian Jenkins 374, ECF No. 12-5. Jenkins stated that he and Blackwell went to Calloway's in Johnsville and then to Circle C. Id. They were traveling in a gray station wagon. Id. Jenkins denied going to Williams in the early morning hours of September 14, 2002. Id. at 374. He admitted that he told Johnson that he had been to Williams and had been in the car on the street in front of the club where the incident occurred. Id. at 375-76. Jenkins claimed that Johnson had threatened to incarcerate him. Id. at 376. Jenkins admitted telling Johnson that he had been in the station wagon with "Terry O," another unknown male, and Blackwell. Id. 377. Jenkins testified, however, that he lied to Johnson because Johnson threatened to put him in jail. Jenkins denied knowing Petitioner. Id. at 378. Jenkins also stated that he had simply made up a description of the alleged fourth suspect as "so light that I think he was white." Id. at 380. Jenkins admitted that he knew of the fourth suspect, Brian Williams. Id. Jenkins described Williams as light skinned. Id. Jenkins admitted that Williams would fit the description that Jenkins had given Johnson. Id.

Johnson was recalled to the stand and denied threatening or coercing Blackwell or Jenkins in any way. Testimony of Gean Johnson 383, ECF No. 12-5.

Brice testified as to the facts surrounding the robbery and shooting. Testimony of Albert Lee Brice 385-88, ECF No. 12-5. Brice testified that he recognized Petitioner's voice and that Petitioner was wearing eyeglasses underneath a ski mask. Id. at 389. Brice knew Petitioner's voice because

Petitioner had called his house several times trying to talk to Petitioner's niece. Id. Petitioner also had been to Brice's house and to his club. Id. Brice also testified that he recognized the weapon as one Petitioner had shown him two or three weeks prior to the incident. Id.

Brice testified that he recognized Petitioner even though it was dark because he was standing beneath a street light. Id. at 390-92, 403. Brice testified that he provided Petitioner's name and the name of Brian Williams to law enforcement. Id. at 398. Brice described Brian Williams as tall, slim, bowlegged, and "real light skinned." Id. According to Brice, he had seen Blackwell driving the gray station wagon earlier that day. Id. at 404.

During closing arguments, the solicitor argued that the jury should believe the statements Blackwell and Jenkins gave to law enforcement, rather than their testimony at trial:

> Do you recall, and again rely on your memory and not mine or [trial counsel's], do ya'll recall the testimony of Marco Jenkins and of Jarrod Blackwell and the references to Satiro Williams? Do you believe them or not? Do you believe what they deny or do you believe what they told the officers?

Transcript of Trial 453, ECF No. 12-6.

The jury found Brice guilty of armed robbery and of the lesser included offense of assault and battery of a high an aggravated nature (ABHAN). Transcript of Jury Verdict 481, ECF No. 12-6. Petitioner was sentenced to ten years incarceration for the charge of ABHAN and fifteen years incarceration of the charge of armed robbery, both sentences to be served concurrently. Transcript of Sentencing 488, ECF No. 12-6.

Petitioner filed a notice of appeal on August 5, 2004. ECF No. 12-7. Petitioner withdrew his appeal on March 28, 2005. Id. The case was remitted to the Clerk of Court for Colleton County on March 22, 2005. Id. On May 27, 2005, Petitioner filed an application for post-conviction relief

7

(PCR) in state court. Petitioner, who was represented by counsel, asserted the following grounds for relief:

(a) Trial counsel failed to adequately investigate the case prior to trial.

(b) Trial counsel failed to adequately prepare and present witnesses at trial

(c) Trial counsel failed to recognize and present objections to errors which occurred during trial.

(d) Trial counsel failed to develop and present viable defenses to the charges against the Applicant prior to and during the trial.

Application for PCR 3, ECF No. 12-7.

The matter came before the Honorable Perry M. Buckner for a hearing on August 27, 2007. Petitioner was represented by PCR counsel. Trial counsel testified that he did not try to locate the fourth suspect, Brian Williams, because he thought he could use to Petitioner's tactical advantage the fact that the Sheriff's Department did not locate Williams or charge him with a crime. Testimony of E.W. Bennett, Jr. 10, 44, ECF No. 12-7. Trial counsel stated that he did not present any expert testimony regarding the inherent unreliability of voice identification. Id. at 11. Trial counsel noted that he was able to exclude one witness pursuant to the Biggers motion. Id. at 15. Trial counsel also testified that he attempted to show that the witnesses did not know Petitioner well enough to identify his voice. Id. at 16. Trial counsel stated that Blackwell and Jenkins both admitted to law enforcement that they were involved in the crime, but merely as drivers. Id. at 19. However, the trial judge had not allowed the videotape of their statements into evidence. Id.

With respect to the dismissal of the charges against Blackwell and Jenkins, trial counsel considered making a motion for mistrial; however, the trial judge stated he was going to treat the dismissal as a directed verdict situation for purposes of explaining it to the jury. Id. at 22, 43. Trial

counsel was satisfied with the trial judge's curative instruction not to hold the dismissal of Blackwell and Jenkins against Petitioner. Id. at 24, 44. Trial counsel testified that, in hindsight, he should have made a motion for mistrial. Id. at 25. Trial counsel did not feel there was much he could do because the solicitor has the power to dismiss a defendant from a case at any time. Id. at 27. Trial counsel further testified that Blackwell and Jenkins' testimony did not damage Petitioner because both men denied being involved in a crime with Petitioner. Id. at 33. Trial counsel testified that he argued the lack of physical evidence to the jury. Id. at 41.

Trial counsel also testified that he did not consider making a motion for dismissal of the charges against Petitioner based on a claim of selective prosecution and a denial of due process. Id. Trial counsel stated that he did not think that the solicitor had planned to start the trial with three defendants and then dismiss two of them. Rather, trial counsel believed that the dismissal of Blackwell and Jenkins was a consequence of the Biggers hearing. Trial counsel did not feel he could prove prosecutorial misconduct or a similar claim. Id. at 59.

Petitioner testified that he would have wanted a mistrial after Blackwell and Jenkins were dismissed from the case. Testimony of Satiro J. Williams 53, ECF No. 12-8. Petitioner testified that trial counsel did not discuss this issue with him. Id. at 52. Petitioner testified that he and trial counsel did not discuss the possibility of locating the fourth suspect, Brian Williams; however, Petitioner had no knowledge of Williams' whereabouts. Id. at 54.

The PCR judge issued an order of dismissal with prejudice on October 10, 2007. ECF No. 12-8. The PCR judge found trial counsel's testimony to be credible and Petitioner's testimony to be not credible. Specifically, the PCR judge found:

> At the PCR hearing, Applicant alleged that counsel was ineffective for failing . . .

> to make a Motion to Dismiss Applicant's charges based on prosecutorial misconduct. . . . Counsel testified he had never been involved in a case where the Solicitor dropped two co-defendants in the middle of a trial and proceeded with the third co-defendant. Counsel testified he considered making a Motion for Mistrial but did not believe it would have been granted. Counsel also testified he did not discuss manifest necessity with the applicant during the trial. Counsel further testified that although the co-defendants testified as State's witnesses, the testimony was not prejudicial to the applicant. Counsel indicated the witnesses testified they did not know the applicant and that they were not with the applicant the day of the crime. Counsel testified he did not consider making a Motion for Dismissal of charges against Applicant due to prosecutorial misconduct because he did not feel he could have proven this at the trial[.]

Order of Dismissal With Prejudice 3-4, ECF No. 12-8.

The PCR judge determined that Petitioner had shown neither deficient performance nor prejudice as mandated by Strickland v. Washington, 466 U.S. 668 (1984). The PCR Judge determined that Petitioner failed to establish a reasonable probability that trial counsel's allegedly deficient performance prejudiced the outcome of the trial. Order of Dismissal With Prejudice 5, ECF No. 12-8. Therefore the PCR judge denied Petitioner's PCR Application.

On October 22, 2007, Petitioner, through counsel, filed a Rule 59(e) Motion to Alter or Amend. ECF No. 12-8. Petitioner contended that he had shown prejudice under Strickland because both Blackwell and Jenkins had given statements to law enforcement implicating Petitioner in the crime. Petitioner asserted that, had the charges against the two co-defendants not been dismissed, the solicitor could not have introduced the inculpatory portions of their statements at trial. Id. Petitioner contended that trial counsel's performance was ineffective because he failed to move for a mistrial either when Blackwell and Jenkins were dismissed or during their questioning. Id. The PCR judge denied Petitioner's Rule 59(e) motion by order filed May 28, 2008. Order of Dismissal, ECF No. 12-8.

Petitioner appealed the PCR judge's ruling on June 18, 2008. ECF No. 12-8. Petitioner, through counsel, filed a Petition for Writ of Certiorari on or about November 12, 2008, raising the following grounds for relief:

> Whether trial counsel ineffective for failing to object to the State being allowed to dismiss all of the charges against the Petitioner's co-defendants during a joint trial in the middle of the State's case?
>
> Whether trial counsel was ineffective for failing to move, during a joint trial, for a mistrial after the charges against the [Petitioner]'s co-defendants were dismissed and they were called as witnesses against him?

Petition for Writ of Certiorari 3, ECF No. 12-9.

The South Carolina Supreme Court denied the petition by order dated September 3, 2009. ECF No. 12-11. Remittitur was issued September 23, 2009. ECF No. 12-12.

## II. DISCUSSION

The petition is governed by the provisions of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), which became effective on April 24, 1996. Under § 2254(a), the court must entertain an application for a writ of habeas corpus on behalf of a person in state custody in violation of the Constitution or laws or treaties of the United States. A § 2254 petition filed by a person in state custody

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, a § 2254 petition filed by a person in state custody

shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is an absence of available State corrective process; or

    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Petitioner now raises the following issues for federal habeas review:

Ground one. Trial counsel was ineffective, in violation of the Petitioner's Sixth and Fourteenth Amendment rights, for failing to object to the State's dismissal of charges against the Petitioner's co-defendants during their joint trial resulting in selective prosecution in violation of the Petitioner's Equal Protection rights.

Ground Two: Defense counsel was ineffective in failing to move for a mistrial following the State's dismissal of charges against co-defendants.

Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus 6-7, ECF No. 1.

To prove ineffective assistance of counsel, Petitioner must show that trial counsel's performance was deficient. See Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. Id. at 688. Petitioner also must demonstrate that he was prejudiced by trial counsel's alleged deficient performance, in that because of trial counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694. Strickland requires Petitioner to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of

12

professionally competent assistance." Id. Even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. Id. at 694. The United States Supreme Court has held:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland, 466 U.S. at 689 (internal citations omitted).

Trial counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690.

A.      Report of Magistrate Judge

The Magistrate Judge noted that Petitioner's grounds for relief are interrelated in that they involve the dismissal of Blackwell and Jenkins on the afternoon of the second day of trial. As noted hereinabove, trial counsel did not move to for a mistrial either at the stage of the proceedings that the solicitor moved to dismiss these co-defendants, or during the testimony of Blackwell and Jenkins as witnesses against Petitioner. The Magistrate Judge determined that trial counsel's performance was not deficient because he articulated an objectively reasonable trial strategy for not moving for mistrial during Petitioner's trial. The Magistrate Judge noted

that trial counsel focused on the curative instruction rather than moving for a mistrial at the time the solicitor moved to dismiss the charges against Blackwell and Jenkins, believing that the trial judge would have denied a motion for mistrial. Report of Magistrate Judge 16, ECF No. 19.

With respect to selective prosecution, the Magistrate Judge further noted that reversible prosecutorial misconduct generally has two components: (1) the prosecutor's conduct must in fact have been improper, and (2) such conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. Id. (citing United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993); United States v. Sheetz, 293 F.3d 175, 185 (4th Cir. 2002)). The Magistrate Judge noted that the government routinely dismisses defendants during trial when it finds evidence is insufficient to support a conviction. Id. at 17 (quoting United States v. DeLucca, 630 F.2d 294, 298 (5th Cir. 1980)). The Magistrate Judge found that trial counsel's strategy was reasonable under the circumstances, and that Petitioner had failed to show prejudice in light of the instructions given by the trial judge. Id. at 18. The Magistrate Judge further determined that the record did not support a claim for selective prosecution. The Magistrate Judge noted that so long as there is probable cause to believe the accused committed a crime, the decision to prosecute is within the prosecutor's discretion as long as it is not tainted by an unconstitutional motive. Id. (citing United States v. Armstrong, 517 U.S. 456, 464 (1996)). The Magistrate Judge found trial counsel was reasonable in believing that the testimony elicited in the Biggers hearing prompted the prosecutor to dismiss the charges against Blackwell and Jenkins. Id. at 19. The Magistrate Judge also found trial counsel reasonably believed that Petitioner was not prejudiced by the testimony of Blackwell and Jenkins. Id.

With respect to Petitioner's claim that the solicitor's actions violated the Equal

Protection Clause, the Magistrate Judge concluded that Petitioner offered nothing other than his conclusory allegation on this issue. Id. at 20. Accordingly, the Magistrate Judge determined that Petitioner failed to show that the PCR judge's decision was "contrary to" or involved an "unreasonable application of" clearly established United States Supreme Court precedent. Id.

B.  Objections

1.  Ground One. Petitioner first contends that the Magistrate Judge erred in finding that trial counsel was not deficient in failing to move for a mistrial. Petitioner contends that trial counsel conceded ineffectiveness when he testified at the PCR hearing that, in hindsight, he should have made a motion for mistrial, even if he thought it would not have been granted.

Under Strickland, the court must review trial counsel's performance from his perspective at the time. Such restricted review is for the purpose of "'eliminat[ing] the distorting effects of hindsight[.]'" Boseman v. Bazzle, 364 F. App'x 796, 807 (4th Cir. 2010) (quoting Strickland, 466 U.S. at 689). In this case, trial counsel articulated a valid strategy in focusing on a curative instruction by the trial judge rather than making a motion for mistrial that he perceived would have been denied. Further, even if trial counsel were determined to be ineffective, Petitioner has failed to demonstrate prejudice. The trial judge informed the parties that he would have been inclined to grant a motion for directed verdict as to Blackwell and Jenkins because the evidence presented was not adequate to support a conviction. Further, trial counsel did not perceive the testimony of Blackwell and Jenkins to be damaging to his client. Had Blackwell and Jenkins testified in conformance with admissions they made to law enforcement, their statements would have implicated Petitioner in the crime. By testifying that they were coerced into making admissions, Blackwell and Jenkins at least left the question of their credibility for

15

the jury to determine. As noted hereinabove, the solicitor was forced to impeach his own witnesses and to argue at closing in favor of the statements they gave to law enforcement.

Petitioner has failed to demonstrate that the outcome of the trial would have been different had trial counsel moved for a mistrial at the time the solicitor moved to dismiss, during the testimony of Blackwell and Jenkins, or during closing arguments. Petitioner's objection is without merit.

Petitioner also contends that the judge's instruction after Blackwell and Jenkins were dismissed from the case did not cure prejudice resulting from the implication that Petitioner remained on trial because he was the guilty party. The court disagrees. As the Magistrate Judge noted, the jury was presumed to follow its instruction to decide the charges against Petitioner based solely on the evidence. See United States v. Campbell, 347 F. App'x 923, 929 (4th Cir. 2009) (noting that the court "presumes that the jury has acted in a manner consistent with its instructions") (citing United States v. Alerre, 430 F.3d 681, 692 (4th Cir. 2005)). Petitioner's objection is without merit.

2. Ground Two. Petitioner contends that the Magistrate Judge erred in finding no evidence to support a claim of prosecutorial misconduct. Petitioner asserts that the solicitor's true motivation was to sacrifice obtaining convictions for Blackwell and Jenkins in order to secure a conviction for Petitioner. The court disagrees. So long as there is probable cause to believe the accused committed a criminal offense, the decision to prosecute is within the solicitor's discretion as long as it is not tainted by an unconstitutional motive. United States v. Smith, 261 F. App'x 477, 478 (4th Cir. 2008) (citing United States v. Armstrong, 517 U.S. 456, 464 (1996)). The court must presume that the solicitor used his discretion appropriately. Id.

16

As noted hereinabove, the solicitor determined to dismiss the charges against Blackwell and Jenkins subsequent to the Biggers hearing when the victim testified that he had not seen either Blackwell or Jenkins the night of the robbery. Petitioner identifies no unconstitutional motive for his decision. Accordingly, trial counsel was not ineffective for failing to move for a mistrial following the dismissal of the charges against Petitioner's co-defendants.

The court concludes that, in light of all the circumstances, trial counsel's performance was well within the wide range of professionally competent assistance. Further, the court finds that Petitioner has failed to demonstrate that he was prejudiced by trial counsel's alleged deficient performance. Thus, the PCR judge's denial of Petitioner's PCR application neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## III. CONCLUSION

The court adopts the Report and Recommendation and incorporates it herein by reference. For the reasons stated, Respondent's motion for summary judgment (ECF No. 11) is **granted** and Petitioner's petition for a writ of habeas corpus is **denied** and dismissed, with prejudice.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases, as effective December 1, 2009, provides that the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability will not issue absent "a

17

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>Rose v. Lee</u>, 252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that Petitioner has not made the requisite showing. Accordingly, the court **denies** a certificate of appealability.

    **IT IS SO ORDERED**.

                                           /s/ Margaret B. Seymour
                                           United States District Judge

Columbia, South Carolina

September 24, 2010.

**NOTICE OF RIGHT TO APPEAL**

**Petitioner is hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**